JOHN L. CARTER,

         Plaintiff,

  - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

         Defendant.

MEMORANDUM AND ORDER
14-CV-4970 (JG)

A P P E A R A N C E S:

 ALEGRIA & BAROVICK, LLP
  235 Main Street, Suite 318
  White Plains, NY 10601
 By: Andrew J. Barovick
  *Attorneys for Plaintiff*

 KELLY T. CURRIE
  Acting United States Attorney
  Eastern District of New York
  271 Cadman Plaza East
  Brooklyn, NY 11201
 By: Thomas C. O'Connor[1]
  Arthur Swerdloff
  *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

    John L. Carter seeks review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration's denial of his application for Social Security Disability benefits. The parties have cross-moved for judgment on the pleadings. Carter asserts that the Administrative Law Judge ("ALJ") committed various errors in finding him not disabled and seeks a remand to the Acting Commissioner of Social Security (the "Commissioner") for further proceedings. The

---

[1] On consent, law student intern Thomas C. O'Connor argued the case on behalf of the Commissioner.

Commissioner requests that I affirm her decision. I heard oral argument on June 19, 2015. For the reasons that follow, Carter's motion is granted and the Commissioner's motion is denied. The case is remanded to the Commissioner for further proceedings consistent with this decision.

BACKGROUND

A.  *Facts and Procedural History*

Carter was born in 1967 and was 42 years old at the onset of his disability. R. 34.[2] He has an eleventh-grade education. R. 46. Until January 2010, when he was laid off, Carter worked at Wonderbread bakery in the shipping department. He was there for about 15 years. R. 46-47. In April 2011, Carter was in a car accident, sustaining injuries to his neck and back. R. 48. He later had surgery on his neck for a fracture of his C5 vertebra. R. 48.

Carter applied for disability benefits on October 19, 2011. R. 122-23. His application was denied on December 13, 2011. R. 81-84. He subsequently requested a hearing, which was held before ALJ John J. Barry on September 6, 2012. R. 39-77. At the hearing, Carter amended the onset date of his disability from January 1, 2010, to April 19, 2011, the date of his car accident. R. 52, 122. The ALJ found that Carter was not disabled in a decision dated February 1, 2013. R. 23-38. Carter requested review of the decision, and the Appeals Council denied review on June 17, 2014. R. 1-6. At that time, the decision became the final decision of the Commissioner.

B.  *Regulatory Standards*

In order to receive disability benefits under the Social Security Act, a claimant must have been disabled during an insured period. 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989). For a person to be "disabled" under the Social Security Act, he must show an "inability to engage in any substantial gainful activity by reason of any

---

[2]  Citations in the form "R. \_" refer to the pages of the administrative record.

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act requires that an individual be "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). Carter bears the initial burden of proof on disability status and is required to demonstrate his disability by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence that the Commissioner may require. 42 U.S.C. § 423(d)(5)(A).

An ALJ must use a sequential five-step analysis to determine whether a claimant is disabled under the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). First, the claimant must not be "engaged in substantial gainful activity." Second, the ALJ considers whether the claimant has a "severe" impairment that significantly limits his ability to do basic work activities. If the impairment is severe, the ALJ will decide if the claimant is disabled by first considering whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. 20 C.F.R. pt. 404, subpt. P, app. 1. If the impairment is listed, the claimant is deemed disabled. If it is not listed (or not medically equal in severity to a listed impairment), the ALJ will make a finding about the claimant's "residual functional capacity" ("RFC") in step four and, if necessary, step five. 20 C.F.R. § 404.1520(e).

At step four, the ALJ will decide whether, despite the claimant's impairment or impairments, he has the RFC to perform his "past relevant work." 20 C.F.R. § 404.1520(e). If he does, he is not disabled. If he is not able to perform his past work, the ALJ determines at step

3

five whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proof in the first four steps, and the burden shifts to the Commissioner in the last step. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations," *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004), or "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal quotations omitted). If the record establishes "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose," the court should remand solely for the calculation and payment of benefits. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (citation omitted).

C. *The ALJ's Decision*

At step one, the ALJ found that Carter meets the insured requirements of the Act through December 31, 2015. He found that Carter has not engaged in substantial gainful activity since the amended alleged onset date of April 19, 2011. R. 28. At step two, the ALJ found that Carter has the following severe impairments: discogenic[3] and degenerative back disorder, status post discectomy[4] and fusion at C5-6 status post motor vehicle accident on April 19, 2011, and obesity. R. 28. At step three, the ALJ found that Carter does not have an impairment or

---

[3] "Discogenic" refers to pain originating from a damaged vertebral disc. *See* Discogenic Pain Definition, http://www.spine-health.com/glossary/discogenic-pain (last visited August 27, 2015).
[4] A "discectomy" or "diskectomy" is a surgical procedure that removes the damaged portion of a herniated disc in a patient's spine. *See* Disketcomy Definition, *Mayo Clinic*, http://www.mayoclinic.org/tests-procedures/diskectomy/basics/definition/prc-20013864 (last visited August 27, 2015).

4

combination of impairments that meets or equals the severity of one of the impairments in Appendix 1 of the regulations. R. 28 (citing 20 C.F.R. pt. 404, subpt. P, app. 1).

Next, the ALJ found that Carter has the RFC to perform sedentary work. In making this determination, the ALJ found that Carter can lift/carry ten pounds occasionally and up to ten pounds frequently, sit for six hours, and stand/walk for up to two hours in an eight-hour workday with the option to sit/stand every 30 minutes. The ALJ said that Carter cannot climb ladders, can occasionally climb ramps or stairs, and can perform occasional balancing, bending, and stooping. R. 29.

As part of his RFC determination, the ALJ had to make a finding regarding Carter's credibility using a prescribed, two-step process.[5] At the first step, the ALJ found that medical evidence in the record revealed conditions that could be expected to cause Carter's symptoms. But he went on to find that Carter's statements about the intensity, persistence, and limiting effects of the symptoms were not credible. R. 32.

The ALJ gave the opinion of state agency medical consultant Dr. A. Shteyngart, who said Carter could perform sedentary work, "some weight" because it was "not inconsistent with the record as a whole." R. 32 (citing R. 334-39). However, the ALJ gave the opinion from state agency physician Dr. Howard Bronstein "little weight because other medical opinions are more consistent with the record as a whole." R. 32 (citing R. 343-50). Bronstein's opinion said Carter was capable of less than a full range of light work, which is more than sedentary work. R. 32.

---

[5] "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). At the second step, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id*. (quoting 20 C.F.R. § 404.1529(a)) (alteration added).

The ALJ gave "significant weight" to the opinion of Carter's surgeon, Dr. Richard Johnson, who said that Carter did well after his surgery and, aside from a mild loss of vertebral height at the C5 and C6 levels, his alignment and disc spaces were well maintained. Johnson said Carter "did not have problems significant enough to interfere with [his] ability to function on a daily basis." R. 33. The ALJ said subsequent reports from Johnson said that Carter improved and "was asymptomatic." R. 33. Finally, the ALJ gave "some weight" to the opinion from consultative orthopedic examiner Dr. Antero Sarreal, who found Carter was in no acute distress and had moderate limitations including prolonged sitting or standing, walking for long distances, and overhead arm activity of the right arm. R. 33.

After the ALJ made his conclusions regarding the objective medical evidence, he went on to consider the subjective factors specified in the regulations.[6] In the last part of his findings concerning Carter's credibility, he addressed Carter's testimony about his symptoms and concluded that Carter's allegations about his impairments and ability to do work were "unsubstantiated by the medical record." R. 33. The ALJ called Carter's treatment post-surgery "conservative," noted he "only takes Tylenol for pain," and said there is "no indication of significant ongoing medical treatment." R. 33. He continued:

> The longitudinal history of treatment and the objective evidence related to the claimant's alleged impairments do not rise to the level of treatment one would expect for a totally disabled individual. There is no indication of limitations related to obesity. Although he alleges that he cannot perform daily activities as he had in the past, there is no evidence of significant restrictions of daily activities.

---

[6] The regulations provide that if Carter's symptoms suggest greater limitations than shown by the medical evidence alone, the ALJ must give consideration to other factors, including Carter's daily activities; the nature, duration, and frequency of his pain or other symptoms; precipitating and aggravating factors; type, dosage, and side-effects of his medications; other treatment he receives; and any other measures Carter uses to relieve his pain. *See* 20 C.F.R. § 404.1529(c)(3).

R. 33. Based on this, the ALJ said that Carter's RFC was supported by the evidence of record and he was not disabled.

At step four, the ALJ found that Carter could not perform his past relevant work as a warehouse worker for Wonderbread bakery. R. 34. In his finding with respect to step five, the ALJ heard testimony from a vocational expert who said that given all of the relevant factors (Carter's age, education, work experience, and RFC), Carter could perform the jobs of food cashier, nut sorter, clock and watch assembler, fastener, and lamp shade assembler. R. 34-35. Finally, the ALJ found that Carter was not disabled under the Act because he is capable of "making a successful adjustment to other work that exists in significant numbers in the national economy." R. 35.

D. *The Hearing Testimony*

At the hearing on September 6, 2012, the ALJ asked Carter about his medical treatment and symptoms. Carter testified that he was 45 years old, six-feet tall, and 340 pounds. R. 43. Since his car accident in April 2011, Carter has gained about 35 to 40 pounds. R. 63. Carter received unemployment after he was laid off, but that ended in August of 2012. R. 47.

On a scale of one to ten, Carter rated his pain at seven or eight on a daily basis. R. 64. He takes Tylenol for his pain, and has visited the hospital once since his accident because of pain. R. 55-56, 65-66. He wakes up at night because of headaches and pain in his neck. R. 65. The pain in Carter's neck occurs several times a day and lasts up to 45 minutes at a time. R. 53-54. When Carter experiences pain, he lies on his left side because he said that position helps to alleviate his pain. R. 60-61. In addition to the problems with his neck and back, Carter testified that he has a problem with his right foot going numb. R. 53-54.

At home, Carter does not cook, clean, wash dishes, do grocery shopping or do laundry. His wife does all of those things. R. 56. Carter is able to feed himself, and his wife sometimes helps him get dressed and shower. R. 58-59. Carter stays at home all day and only leaves his house to go to the doctor or to sit on his stoop. R. 59-60. Carter testified that he can walk for up to two blocks and can stand for 20 to 30 minutes. He can sit for only about 20 to 30 minutes. R. 61-62. He uses a cane that was prescribed by his doctor. R. 66. Before the accident, Carter's job required him to lift up to 200 pounds, but now he can only lift up to about eight pounds. R. 62-63. He does not take the train or the bus because it is too painful for him. R. 63.

The ALJ also heard testimony from a vocational expert. The vocational expert clarified that when Carter testified he lifted up to 200 pounds, he was talking about pushing and pulling racks of bread. The vocational expert classified Carter's past work as a warehouse worker as requiring a medium to heavy level of exertion. R. 69-70. The ALJ asked the vocational expert to assume that someone with Carter's age and education level could lift up to ten pounds frequently, sit for up to six hours in an eight-hour workday, and stand/walk for up to two hours in an eight-hour workday with a sit/stand option every 30 minutes. The vocational expert said assuming those limitations, Carter could not perform his past work but could perform several sedentary jobs that exist in significant numbers in the regional economy. The vocational expert gave several examples of qualifying sedentary jobs, which were food checking, which the vocational expert explained was a form of cashier, and small product assembly jobs, such as assembling lampshades, clocks or watches, and fasteners. R. 70-71.

Then the ALJ further limited the hypothetical by asking the vocational expert whether, at any of those jobs, the worker could be off-task for 15 percent of the workday due to

unscheduled breaks to lie down and relieve pain. With this additional limitation, the vocational expert said there would not be jobs, and "[t]hat would really significantly interfere with the ability to maintain employment." R. 72.

DISCUSSION

In her motion for judgment on the pleadings, the Commissioner argues that the ALJ's decision should be upheld because the ALJ's findings that (1) Carter's allegations were not credible to the extent alleged and (2) Carter could perform sedentary work were supported by substantial evidence. In his cross-motion, Carter asserts that the ALJ erred in (1) discounting the opinion of treating physician Dr. Zuheir J. Said and (2) finding Carter was capable of performing sedentary work. Carter argues that the evidence in the record and new evidence Carter submitted along with this motion support a finding that Carter is disabled under the Act.

A.  *Standard of Review*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied and whether the ALJ's findings are supported by substantial evidence. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also id.* ("Substantial evidence is more than a mere scintilla.") (internal quotations omitted). A hearing on disability benefits is a nonadversarial proceeding, and the ALJ "has an affirmative obligation to develop the administrative record." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (citation omitted). If substantial evidence supports the Commissioner's factual findings, they must be upheld. *See* 42 U.S.C. § 405(g); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

B.  *The Treating Physician Rule*

1.  *The Legal Standard*

The Social Security Act requires deference to the physician who has engaged in the primary treatment of the claimant. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Under the regulations, a treating physician's opinion about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (upholding these regulations). An ALJ must set forth "good reasons" for refusing to accord the opinions of a treating physician controlling weight and explain the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The ALJ must consider several factors in making this determination, including the frequency and extent of treatment, the underlying evidence in support of the opinion, and the consistency of the opinion with the record as a whole. *See id.*; *see also Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000) (to overcome an "otherwise valid medical opinion," an ALJ must make an "overwhelmingly compelling" critique of it). "Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotations omitted).

If there are unanswered questions about the physician's opinion, an ALJ should develop the record to fill the gaps before deciding the opinion is not supported by the record. *See Rosa*, 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Cleveland v. Apfel*, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) ("When the opinion submitted by a treating physician is not

10

adequately supported by clinical findings, the ALJ must attempt, *sua sponte*, to develop the record further by contacting the treating physician to determine whether the required information is available.").

      2.    *Dr. Zuheir J. Said*

Carter asserts that the ALJ did not follow the treating physician rule in considering the opinion of Dr. Said. He argues that Said saw him monthly from May to September of 2011 "and knew his medical status better than any other medical professional cited in the ALJ's decision." Pl. Br. at 11. Indeed, Said qualifies as a treating source who established an ongoing treatment relationship with Carter under the applicable regulations. *See* 20 C.F.R. § 404.1502 (defining an "ongoing treatment relationship" with a treating source as "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment . . . required for your medical condition(s)").

The ALJ's opinion described the treatment records from Dr. Said as "follow-up reports" for the period following Carter's accident and surgery. R. 31. The ALJ said that the records reflect that Carter "had minor complaints of neck pain that was sporadic and posture related." R. 31. He also said that those treatment records reflect that Carter had some pain with range of motion in his right upper extremity, normal range of motion of the lumbosacral spine, and normal range of motion of the lower extremities. The ALJ further found that "[s]ubsequent reports reflect that the claimant improved and was asymptomatic." R. 31. The ALJ did not identify Said as a treating physician or assess the weight he would afford to Said's treatment notes.

Carter argues that the ALJ failed to accord Said's opinion "any weight," let alone controlling weight. Pl. Br. at 12. The Commissioner responds that this is not a proper basis for remand because Said's notes supported the ALJ's conclusions regarding Carter's credibility and RFC. *See* Def. Reply Br. at 2-3. Indeed, when Carter first went to see Said, in May 2011, Said noted Carter's pain was at a seven on a scale of one to ten. Def. Br. at 17 (citing R. 289). Then in September 2011, at the end of Said's treatment of Carter, Said noted that Carter's pain was only at a one or two, and Said described him as "asymptomatic." Def. Br. at 17 (citing R. 266).

The Commissioner argues that Said's notes should not be entitled to controlling weight because he "did not provide an assessment of Plaintiff's ability to perform work-related activities." Def. Reply Br. at 2. However, this is not a legitimate reason for the ALJ to accord no weight to Said's analysis. To the contrary, the ALJ has an affirmative obligation to obtain opinions from all treating physicians regarding a claimant's RFC. *See Lawler v. Astrue*, No. 10-CV-3397 (ARR), 2011 WL 5825781, at *7 (E.D.N.Y. Nov. 14, 2011) ("An ALJ's affirmative obligation to develop the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity."). If the ALJ had doubts as to the credibility of Said's analysis, he should have developed the record further.

I disagree with Carter's assertion that the ALJ failed to "pay any attention" to Said's treatment records, since the ALJ did discuss them, as mentioned above. However, I agree that the ALJ failed to afford controlling weight to Said's treatment records, which documented Carter's additional symptoms as discussed above. If the ALJ decided not to accord controlling weight to Said's records, he should have explained his reasons for doing so. *See* 20 C.F.R. §

404.1527(c)(2); *see also Shaw*, 221 F.3d at 134-35. Instead, he made only this statement near the end of the decision:

> In this case, consideration has been given to the reports of treating and examining sources as presented above, as well as to reports not specifically referenced. The undersigned has considered all the available evidence, as presented, and has given appropriate weight accordingly.

R. 33. I also note that the ALJ failed to assess whether the medical evidence from the Joseph Addabbo Family Health Center, where Carter said he was currently receiving treatment, should be entitled to controlling weight. *See* R. 54. If the ALJ finds that the Joseph Addabbo treatment records should be accorded controlling weight, the ALJ should also obtain an opinion regarding Carter's RFC from the appropriate physician at that facility.

For these reasons, I remand the case to the Commissioner to develop the record with respect to Carter's treating physicians and either accord controlling weight to Said's records or explain what weight, if any, they have been given and provide the reasons for further determinations as required by the regulations.

    C.    *The RFC Determination*

Carter also takes issue with the ALJ's determination that he was capable of performing sedentary work. Specifically, he contests the ALJ's finding that he was capable of work requiring him to use his hands, like nut sorting and small-product assembly, without considering the numbness that Carter experiences in his right arm, hand, and fingers. Carter also contends the ALJ did not account for Carter's obesity, limited neck mobility, pain while sitting for long periods of time, and his inability to remain focused. Pl. Br. at 15.

A claimant's RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). It is based on all the relevant evidence in the claimant's

record. *Id*. "The ALJ's duty to develop the record includes ensuring that the record as a whole is complete and detailed enough to allow the ALJ to determine the Plaintiff's RFC." *Fernandez v. Astrue*, No. 11-CV-3896 (DLI), 2013 WL 1291284, at *16 (E.D.N.Y. Mar. 28, 2013). A claimant's RFC should take into consideration his physical abilities, mental abilities, and "other abilities affected by impairment(s)." 20 C.F.R. § 404.1545(b)-(d).

Carter argues that the ALJ ignored Said's diagnoses of Carter's numbness and tingling in his right arm through his fingers (*e.g*., R. 285-89), which would significantly affect his ability to hold the jobs recommended by the vocational expert, such as small-product assembly. *See* Pl. Br. at 12. Carter points to records from other medical sources that substantiated Carter's testimony about his numbness. Specifically, he argues that: (1) Dr. Wilson's examination revealed sensory deficits in the nerves attached to Carter's lower right arm (R. 300-01); (2) Dr. Sarreal's findings mentioned pain radiating to Carter's right arm and numbness in his right fingers (R. 330-33); and (3) Dr. Bronstein also found decreased sensation in Carter's right arm (R. 342). *See* Pl. Br. at 13-14.

The Commissioner points out that despite the physicians' findings that Carter experienced some numbness in his right hand and thumb, those physicians concluded that this symptom would not affect Carter's ability to use his hands. *See* Def. Br. at 18. The Commissioner points to Dr. Sarreal's opinion in December 2011 that Carter's hand and finger dexterity were intact and he had full grip strength (citing R. 332), and the fact that at the end of his visits with Carter, Dr. Said considered him "asymptomatic." (R. 276-77, 266). I also note that on December 13, 2011, Dr. Shteyngart said that Carter has a limited range of motion in his right shoulder but full range of motion in his elbows, wrists, and fingers. R. 335. In addition, on April 11, 2012, Dr. Bronstein found decreased sensation in Carter's right arm but that his hand

dexterity and grip strength were normal. R. 342. Moreover, Said's notes from Carter's June and July 2011 visits appear to conclude that despite experiencing numbness in his right thumb, Carter has no limitation of movement and pain resulting from it and has full range of motion. *See* R. 282-85.

Despite the evidence in the record, the ALJ failed to question Carter about this symptom or draw any conclusions about its effect on his ability to work. It is the duty of the Commissioner, and not this Court, to weigh conflicting evidence in the first instance and fully develop the administrative record — especially when that evidence includes medical records from a treating physician. *See Concepcion v. Colvin*, No. 12-CV-6545 (FM), 2014 WL 1284900, at *13 (S.D.N.Y. Mar. 31, 2014) ("[F]ailure to develop conflicting medical evidence from a treating physician is legal error requiring remand.") (citing cases). Therefore, on remand, the ALJ should specifically address this symptom and weigh the medical evidence concerning it.

I also agree that the ALJ failed to account for Carter's other symptoms in his RFC determination. For example, the ALJ should have factored in Carter's memory problems. *See* 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities, such as limitations in . . . remembering . . . may reduce your ability to do past work and other work."). In his function report, Carter testified that he has problems with his memory and relies on his wife to remind him of appointments. R. 183, 188. Carter also reported memory problems to Dr. Wilson. R. 300. And Dr. Sarreal noted that Carter could not remember his phone number or the name of his primary care physician. R. 331. The ALJ did not develop the record in this respect at the hearing or with the vocational expert, and he did not refer to Carter's memory problems in his decision. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("[T]he ALJ must not only develop the proof but carefully weigh it.") (internal quotation marks omitted).

Additionally, the ALJ should have accounted for the fact that Carter needed breaks to lie down and relieve pain. Carter testified that he could not sit for longer than 20 to 30 minutes at the hearing and needed to lie on his side to relieve his pain. R. 60-61. Sarreal also opined that Carter has a moderate limitation with respect to prolonged sitting. R. 333. When the ALJ asked the vocational expert about this additional limitation, the vocational expert said "[t]hat would really significantly interfere with the ability to maintain employment." R. 72. The ALJ did not alter his conclusions regarding Carter's RFC after asking the vocational expert about this additional limitation. On remand, he should further develop the record in this respect.

Finally, the ALJ did not develop the record with respect to Carter's ability to get to work, since Carter testified that he does not take the train or the bus because it is too painful for him. *See* R. 63. He also said he does not drive. R. 44. Given this testimony, it was error for the ALJ to find that Carter was capable of maintaining employment and to disregard this limitation in his questioning of the vocational expert. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) ("The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.").

For these reasons, I remand the case to give the ALJ an opportunity to develop the record with respect to Carter's capacity for sedentary work and assess the extent of Carter's limitations with respect to numbness in his right hand and fingers, memory problems, and ability to travel to work.

D. *New Evidence*

Carter also argues that I should consider an assessment performed in September 2014 by Carter's treating internist, Dr. Oluwatoyosi Dairo, which found that Carter cannot

16

perform full-time work that requires activity on a sustained basis. Pl. Br. at 17 (citing Ex. 1 at 5). Dairo filled out a Multiple Impairment Questionnaire that documented Carter's symptoms and limitations. The symptoms listed were neck pain, numbness on the right arm, and numbness in both legs. Ex. 1 at 2. Dairo estimated that Carter only had the capacity to sit, stand, or walk for up to one hour, and he said it would not be medically recommended for Carter to sit continuously in a full-time work setting. Ex. 1 at 3. Dairo found that Carter would have moderate limitations in using his hands and fingers for fine manipulations and grasping, turning, or twisting objects. Ex. 1 at 4. He opined that Carter cannot do a full-time job that requires sustained activity. Ex. 1 at 5. Dairo also indicated that the symptoms documented in his report have occurred since 2011. Ex. 1 at 7.

I may remand for the purpose of ordering the Commissioner to take additional evidence into account, but only "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding . . ." 42 U.S.C. § 405(g). The Second Circuit has developed a three-part test for the inclusion of additional evidence. A plaintiff must show that the proffered evidence is:

> (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

*Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007) (quoting *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (alteration added)).

Assuming without deciding that Dr. Dairo's report was new and material, Carter has not shown good cause for his failure to include it in the record before the ALJ. "Good cause

for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Lisa*, 940 F.2d at 44. Here, Carter has made no showing that he could not have obtained the evidence during the pendency of the proceeding. However, remand is required for the reasons set forth above, and as a result the claimant may submit, and the ALJ may consider, Dr. Dairo's records and opinions along with all of the other relevant evidence.

CONCLUSION

For the reasons explained above, Carter's motion for judgment on the pleadings is granted and the Commissioner's motion is denied. The case is remanded to the Commissioner for proceedings consistent with this decision.

So ordered.


John Gleeson, U.S.D.J.


Dated: September 1, 2015
      Brooklyn, New York